# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TARA VITATOE, individually and as
next friend and natural mother of
JACOBIE VITATOE, a minor,

      Plaintiffs,

v.                                 CIVIL ACTION NO. 1:08cv85
                                 (Judge Keeley)

MYLAN PHARMACEUTICALS, INC.;
MYLAN, INC.; and
MYLAN LABORATORIES, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## <u>DENYING PLAINTIFF'S MOTION TO REMAND</u>

This case involves a products liability claim for the manufacture and distribution of Phenytoin Sodium 100 mg extended capsules, a medication marketed by the defendants to treat seizures. On June 24, 2008, the Court heard argument on the plaintiff's Motion to Remand this action to the Circuit Court of Monongalia County, West Virginia (dkt. no. 9). The question addressed by the parties at that hearing was whether defendant Mylan, Inc. had properly removed the case to federal court, despite the presence of a forum defendant, by removing prior to service of the Complaint on any of the defendants. The Court concluded that it had and denied the motion to remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 2007, Jacobie Vitatoe ("Jacobie") was found slumped over his desk at school. He was taken to Lake Charles

<u>MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND</u>

Memorial Hospital in Lake Charles, Louisiana, where he was evaluated for seizures and prescribed Phenytoin Sodium 100 mg extended capsules, the therapeutic equivalent of Dilantin. According to the Complaint, Jacobie's prescription was filled on February 12, 2007, and his mother, Tara Vitatoe ("Vitatoe"), ensured that he took it as directed.

On March 3, 2007, Jacobie suffered a second seizure and, by the evening of March 4, 2007, had developed a significant rash. He returned to the hospital on March 5, 2007, and was diagnosed with Stevens Johnson Syndrome ("SJS"). On March 7, 2007, he was transferred to the Shriner's Burn Hospital in Galveston, Texas, where he remained until March 26, 2007.

According to the Complaint, Jacobie has undergone numerous treatments for injuries to his eyes and eyelids caused by SJS, and also has had several follow-up hospitalizations. Vitatoe alleges that the SJS occurred after Jacobie ingested the Phenytoin Sodium, and that Jacobie had been permanently injured as a result of the SJS.

Vitatoe filed her Complaint on February 12, 2008, in the Circuit Court of Monongalia County, West Virginia, asserting claims against Mylan Pharmaceuticals Inc. ("Mylan WV"), Mylan Laboratories

2

Inc., and Mylan, Inc. (collectively "Mylan PA")[1] for the manufacture and distribution of Phenytoin Sodium 100 mg extended capsules. Specifically, she brings claims for strict liability, negligence, breach of implied warranty, misrepresentation, emotional distress, and loss of consortium.

On February 29, 2008, before service of process on any of the defendants, Mylan PA removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). After serving Mylan WV on March 10, 2008, Vitatoe filed this motion to remand on March 31, 2008.

## II. STANDARD OF REVIEW

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– (1) citizens of different States . . . ." 28 U.S.C. § 1332(a). However, a diversity action "shall be removable only if none of the parties in interest <u>properly joined and served as defendants</u> is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(emphasis added). The emphasized language is the focus of dispute between the parties in this case.

---

[1]    According to the notice of removal, Mylan, Inc. and Mylan Laboratories, Inc. are the same entity. Mylan, Inc. was formerly known as Mylan Laboratories, Inc.

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." <u>Mulcahey v. Columbia Organic Chemicals Co., Inc.</u>, 29 F.3d 148, 151 (4th Cir. 1994) (<u>citing</u> <u>Wilson v. Republic Iron and Steel Co.</u>, 257 U.S. 92 (1921)). Because removal implicated significant federalism concerns, courts are obligated to construe removal jurisdiction strictly. <u>Lontz v. Tharp</u>, 413 F.3d 435, 440 (4th Cir. 2005). All doubts about the propriety of removal should be resolved in favor of retaining state court jurisdiction. <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 425 (4th Cir. 1999).

### III. ANALYSIS

Tara and Jacobie Vitatoe are residents of Louisiana, Mylan WV is a West Virginia corporation with its principal place of business in West Virginia, and Mylan PA is a Pennsylvania corporation with its principal place of business in Pennsylvania. The Complaint seeks "all damages recoverable under West Virginia law." Mylan PA's Notice of Removal states that Vitatoe has offered to settle the case for $4,500,000. Because complete diversity of citizenship exists between the parties, and because the amount in controversy exceeds $75,000, the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a) are satisfied.

Even if a court has original subject matter jurisdiction based on diversity, however, § 1441(b) makes removal improper if any defendant "properly joined and served" is a citizen of the forum state.  28 U.S.C. § 1441(b).  In this case, although Mylan WV is a citizen of the forum state, Mylan PA removed the action before either defendant was served with process.  The question presented, therefore, is whether Mylan PA properly removed the case to federal court despite the prohibition of § 1441(b).

**A.**

Neither the Supreme Court of the United States nor the Fourth Circuit Court of Appeals has specifically decided whether removal is proper in cases involving an unserved forum defendant.  A number of courts have addressed the issue, but a distinct split of authority exists among them about whether § 1441(b)'s clear statutory language should be followed.

**1.**

In the Fourth Circuit, several districts courts have addressed similar issues.  In Workman v. Nat'l Supaflu Sys., Inc., 676 F.Supp. 690 (D.S.C. 1987), the plaintiff, a resident of South Carolina, filed suit against National Supaflu Systems, Inc. ("National"), a New York corporation with its principal place of business in New York, and Carolina Supaflu, Inc. ("Carolina"), a

<u>**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND**</u>

South Carolina corporation with its principal place of business in South Carolina, over restoration work performed on his home. <u>Workman</u>, 676 F.Supp at 691.  Prior to service of process on Carolina, National removed the case based on diversity of citizenship.  <u>Id.</u>  The plaintiff moved to remand and the court granted the motion, finding that the unserved resident defendant defeated diversity jurisdiction.  <u>Id.</u> at 692.  <u>Workman</u> is inapposite to the facts in the case at bar, however, because both the plaintiff and unserved defendant were residents of South Carolina.  <u>Id.</u> at 693 (stating that the case must be remanded because the non-served resident defendant defeated diversity and had not been formally dropped from the action prior to removal).

In contrast, in <u>Wensil v. E.I. Dupont De Nemours and Co.</u>, 792 F.Supp. 447, 449 (D.S.C. 1992), the court denied a motion to remand even though complete diversity existed.  While insightful, <u>Wensil</u> is not directly on point with the issue raised in this case because, unlike the defendants here, the non-forum defendants in <u>Wensil</u> had been served with process prior to removing the case. <u>Id.</u> at 447. Adhering to the plain language of the statute, the court concluded that removal was proper only where complete

diversity existed between the parties and the forum defendants had not been served at the time of removal.[2]  <u>Id.</u>

At least two courts in the District of Maryland have reached different conclusions about the import of § 1441(b)'s language.  In <u>Clawson v. Fedex Ground Package Sys., Inc.</u>, 451 F.Supp.2d 731 (D.Md. 2006), the court remanded the case on the basis that removal was untimely; in doing so, however, it observed that an unserved resident defendant did not prevent removal.  <u>Clawson</u>, 451 F.Supp.2d at 736.  The Clawsons, residents of Pennsylvania, sued FedEx, an Ohio corporation, and Paul Belcher, a FedEx driver and Maryland resident, in Maryland state court over injuries they had sustained in an accident with Belcher's delivery truck.  <u>Id.</u> at 732.  Suit was filed on April 15, 2005, and FedEx was served on April 19, 2005.  <u>Id.</u>  Belcher, however, was never served.  <u>Id.</u>  On March 6, 2006, the parties entered into a joint stipulation dismissing Belcher from the case, following which, on March 13, 2006, FedEx removed the case based on diversity, alleging that the action "is now one in which this Court has original jurisdiction."  <u>Id.</u>

---

[2]     In dicta, the <u>Wensil</u> court recognized that "the plaintiffs are being deprived of their original choice of forum merely because the [forum] defendants are served after the non-resident defendants.  However, this fortuitous result could have been prevented by serving a [forum] defendant first."  792 F.Supp. at 449.

at 733.  The district court, however, concluded that "this action could have been removed by FedEx from state court at any time after the case was initially filed there so long as Belcher was an unserved defendant," id. at 736. It therefore remanded because it concluded that FedEx's window to remove the case had expired 30 days after service.  Id.

In contrast, in Oxendine v. Merck, 236 F.Supp.2d 517, 526 (D.Md. 2002), the court remanded despite the fact that removal had occurred prior to service on any of the defendants.  It based its decision on policy considerations, not the plain language of the statute, concluding that "removability cannot rationally turn on the timing or sequence of service of process."  Id. at 526.

**2.**

Outside the Fourth Circuit, a number of cases conclude that the plain language of the statute controls. Like Oxendine, however, several cases interpret the statute based on policy grounds and deny removal.

In the District of New Jersey, a number of cases have upheld removal based on the plain language of § 1441(b).  In Thomson v. Novartis Pharm. Corp., 2007 WL 1521138 (D.N.J. May 22, 2007), for example, the plaintiffs, who were residents of Georgia, brought suit in New Jersey state court against Novartis Pharmaceuticals

Corp., a Delaware corporation with its principal place of business in New Jersey, and two other related entities, Novartis Pharma GmbH, a German corporation doing business in New Jersey, and Novartis Corporation, a New York corporation with its principal place of business in New Jersey. Thomson 2007 WL 1521138 at *1. Prior to service on any of the defendants, Novartis Pharmaceuticals Corp. removed the case based on diversity jurisdiction. Id. at *2.

The district court rejected the plaintiffs' policy arguments in favor of remand,[3] concluding that § 1441(b)'s plain language required service of the complaint on the forum defendant in order to preclude removal, and that any conclusion to the contrary would effectively read out the "and served" language of the statute. Id. at *4. Because the requirements of diversity under § 1332(a) had been met, and because the forum defendant had not been served at the time of removal, the court held that removal was proper and denied the plaintiffs' motion to remand. Id. In its decision, the

---

[3] The plaintiffs had argued that corporate defendants could prevent any diverse plaintiff from pursuing a state court action against them by monitoring state court dockets and tracking assignment numbers to remove cases prior to service. Thomson, 2007 WL 1521138 at *3, n.4.

court recognized that its conclusion was supported by "considerable case law from this District and others."[4]  Id.

Among those other district court cases are <u>Johnson v. Precision Airmotive, LLC</u>, 2007 WL 4289656 at *6 (E.D.Mo. Dec. 4, 2007) (denying remand because the forum defendants had not been served); <u>Waldon v. Novartis Pharm. Corp.</u>, 2007 WL 1747128 at *3 (N.D.Cal. June 18, 2007)(finding "no compelling reason to depart from the plain text of section 1441(b). . . ."); <u>City of Ann Arbor Employees' Retirement Sys. v. Gecht</u>, 2007 WL 760568 at *9 (N.D.Cal. March 9, 2007)(denying remand and finding that lack of service on the removing defendant is immaterial).  <u>See</u> <u>also</u> <u>Cucci v. Edwards</u>, 510 F.Supp.2d 479 (C.D.Cal. 2007)(finding removal proper where

---

[4]    <u>See</u> <u>Jaegar v. Schering Corp.</u>, 2007 WL 3170125 at *2 (D.N.J. Oct. 25, 2007) (denying remand because the court "must give effect to the literal interpretation [of the statute] in the absence of a contrary Congressional intent . . . ."); <u>Ripley v. Eon Labs, Inc.</u>, 2007 WL 2406806 at *3 (D.N.J. Aug. 16, 2007) (denying remand because the statutory language of § 1441(b) was unambiguous and a literal reading did not produce a result demonstrably at odds with Congressional intent).  <u>See</u> <u>also</u> <u>Yocham v. Novartis Pharm. Corp.</u>, 2007 WL 2318493 at *3 (D.N.J. Aug. 13, 2007) (denying remand based on the decision in <u>Frick</u> and the plain language of the statute; <u>Frick v. Novartis Pharm. Corp.</u>, 2006 WL 454360 at *3 (D.N.J. Feb. 23, 2006) (denying remand, based on a plain reading of the statute, where a single diverse forum defendant removed prior to service).  <u>But</u> <u>see</u> <u>DeAngelo-Shuayto v. Organon USA Inc.</u>, 2007 WL 4365311 at *3 (D.N.J. Dec. 12, 2007)(granting remand based on the policy underlying diversity jurisdiction); <u>Fields v. Organon USA Inc.</u>, 2007 WL 4365312 at *3 (D.N.J. Dec. 12, 2007)(granting remand based on the policy underlying diversity jurisdiction).

service upon a forum defendant was begun, but not completed, at the time of removal); <u>Massey v. Cassens & Sons, Inc.</u>, 2006 WL 381943 at *2 (S.D.Ill. Feb 16, 2006)(stating that the federal courts have decided "virtually uniformly" that the forum defendant rule only applies if a resident defendant is both joined and served at the time of removal).[5]

Despite this long line of persuasive authority, some courts have ordered remand after concluding that policy concerns relating to the possible manipulation of the removal statutes overrode a plain reading of § 1441(b). In <u>Vivas v. Boeing Co.</u>, 486 F.Supp.2d 726, 734 (N.D.Ill. 2007), for example, the court granted remand on the basis that allowing a resident defendant to remove a case before the plaintiff has a chance to serve would "provide a vehicle for defendants to manipulate the operation of the removal statutes." As well, in <u>Allen v. GlaxoSmithKline PLC</u>, 2008 WL 2247067 at *6 (E.D.Pa. May 30, 2008), the court remanded where one

---

[5]      It is also worth noting that there are numerous decisions upholding removal, based on a plain reading of § 1441(b), where the removing party had been served but the forum defendant had not. <u>See</u>, <u>e.g.</u>, <u>McCall v. Scott</u>, 239 F.3d 808, 813, n.2 (6th Cir. 2001)(stating in dicta that "[w]here there is complete diversity of citizenship . . . the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)); and <u>Test Drilling Serv. Co. v. Hanor Co., Inc.</u>, 322 F.Supp.2d 953, 957 (C.D.Ill. 2003)(denying remand because the presence of an unserved defendant who is a citizen of the forum state does not prevent removal when complete diversity exists).

11

defendant was present, finding that "[l]ogic does not permit considering the citizenship of unserved defendants for purposes of assessing diversity, but then ignoring it for purposes of the forum defendant rule." See also Homstrom v. Harad, 2006 WL 2587962 at *3 (N.D.Ill. Sept. 7, 2006)(granting remand where removal occurred prior to service because the policy behind the change to 28 U.S.C. § 1446, as articulated by the Supreme Court in Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 346 (1999), requires service before a party can file a notice of removal).

## B.

After careful consideration, the Court concludes that the weight of authority and better reasoning supports upholding removal. "[U]nless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." Hillman v. I.R.S., 263 F.3d 338, 342 (4th Cir. 2001) (citing Caminetti v. United States, 242 U.S. 470, 485 (1917)) (the "Plain Meaning Rule"). The Plain Meaning Rule has two exceptions. The first exists "when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense . . . ." In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir. 2004). The second exists "when literal

12

application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent . . . ."  Id.  "[T]he instances in which either of these exceptions to the Plain Meaning Rule apply are, and should be, exceptionally rare."  Id. (internal quotations omitted).

Here, policy arguments notwithstanding, the statutory language of § 1441(b) requiring that the forum defendant be "joined and served" to preclude removal is unambiguous and must be given its plain meaning.  See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ., 127 S.Ct. 1534, 1543 (2007) (stating that "if the intent of Congress is clear and unambiguously expressed by the statutory language at issue, that would be the end of [the Court's] analysis").  Because neither of the exceptions to the Plain Meaning Rule applies in this case, remand is not appropriate.

1.

In her briefs, and at oral argument, Vitatoe argued that the citizenship of an unserved defendant ought not be ignored.  The cases on which she relied to support this argument, however, deal with unserved, non-diverse defendants who destroy the jurisdiction of the federal courts and are inapposite.  See Pullman Co. v. Jenkins, 305 U.S. 534 (1939)(granting remand in a case originally filed in California state court due to the presence of a California

plaintiff and an unserved California defendant); <u>Workman</u>, 616 F.Supp. at 690 (granting remand due to the presence of a South Carolina plaintiff and a South Carolina defendant corporation); <u>Oliver v. American Motors Corp.</u>, 616 F.Supp. 714 (D.C.Va. 1985)(granting remand due to the presence of a Virginia plaintiff and a Virginia defendant corporation).

While it is true that unserved defendants cannot be ignored when determining diversity jurisdiction under § 1332(a), there is no such requirement under § 1441(b). As the district court in <u>Clawson</u> correctly noted, "the diversity and removal statutes treat actions in which the parties are not completely diverse differently from actions in which a party is a citizen of the forum state." 451 F.Supp.2d at 735. The presence of a forum defendant, therefore, is not a jurisdictional defect under § 1441(b) and remand is not required if such defendant is not served at the time of removal. <u>See</u> <u>Lively v. Wild Oats Mkts., Inc.</u>, 456 F.3d 933, 939-41 (9th Cir. 2006) (joining eight sister circuits in determining that joinder of a resident defendant is not a jurisdictional defect). Indeed, the plain language of § 1441(b) is to the contrary.

2.

Vitatoe also argued that the purpose of the "joined and served" requirement is to prevent fraudulent joinder and that a literal application of the statute would be contrary to the intent of Congress.  The court in <u>Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.</u>, 314 F.Supp.2d 177, 181 (S.D.N.Y. 2003), agreed with this argument, stating:

> The purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve.

This Court, however, is not persuaded by this reasoning. Not only did the court in <u>Stan Winston</u> fail to cite any authority in support of its conclusion, it also acknowledged that "the language of § 1441(b) makes plain that its prohibition on removal applies only where a defendant who has been properly joined <u>and</u> <u>served</u> is a resident of the forum state."  <u>Id.</u> at 180 (internal quotations omitted) (emphasis in original).  Moreover, because § 1441(b)'s language is unambiguous, the Court must apply its plain meaning. See <u>Zuni</u>, 127 S.Ct. at 1543; <u>Hillman</u>, 263 F.3d at 342.

Furthermore, no absurd result or "procedural trap" is produced by applying a literal application of the statute. <u>See</u> <u>In re Sunterra Corp.</u>, 361 F.3d at 265.  Section 1441(b) clearly requires that a defendant be both "joined and served" to preclude removal.

15

Moreover, the plaintiff could easily have prevented removal had she simply served Mylan WV immediately. <u>See</u> <u>Wensil</u>, 792 F.Supp. at 449. Although the Circuit Court of Monongalia County and the headquarters of Mylan WV are both located in Morgantown, West Virginia, she made no attempt to serve Mylan WV until 27 days after she filed suit.  Considering that Mylan WV removed the case 17 days after Vitatoe filed her complaint, she had ample time to serve Mylan WV, or its appointed agent for service of process, to assure that her case remained in state court.

3.

Finally, Vitatoe argued that remand is required under § 1441(b) because Mylan WV has now been served.  That argument is meritless, however, given the settled case law that a defendant's right to remove a case is determined at the time the removal notice is filed.  <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 116, n.2 (2d Cir. 2003)(<u>citing</u> <u>Pullman Co. v. Jenkins</u>, 305 U.S. 534, 537 (1939)).  Thus, the fact that Mylan WV was served post-removal is irrelevant.

**IV.  CONCLUSION**

"In construing a statute we are obliged to give effect, if possible, to every word Congress used." <u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 339 (1979)(<u>citing</u> <u>United States v. Menasche</u>, 348 U.S.

16

528, 538-39 (1955)). In this case, Vitatoe's construction of § 1441(b) would require this Court to ignore the "and served" language of the statute. Because the requirements of § 1332(a) are satisfied and because Mylan WV had not been served at the time of removal, Mylan PA's removal of the case was not precluded by § 1441(b). Accordingly, the Court **DENIED** Vitatoe's motion to remand (dkt. no. 9).

The Clerk is directed to transmit copies of this Order to counsel of record.

Dated: August 13, 2008

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE